Charles H. YOUNG, Plaintiff-Appellant,

v.

Robert E. HAMPTON et al., Defendants-Appellees.

No. 76–2265.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1977.

Decided Dec. 29, 1977.

Jack L. Brooks, Rock Island, Ill., for plaintiff-appellant.

Gerald D. Fines, U. S. Atty., Springfield, Ill., Terry G. Harn, Asst. U. S. Atty., Peoria, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and KUNZIG,* Judge.

KUNZIG, Judge:

This civilian personnel action comes to us on appeal from a decision of the United States District Court for the Southern District of Illinois (Northern Division) denying back pay and reinstatement to an employee of the Army Arsenal at Rock Island, Illinois. Plaintiff (Young) had been arrested at his private residence during off-duty hours and charged with possession of a controlled substance [1] and unlawful possession of cannabis (marijuana). He pled guilty, was sentenced to 90 days confinement and 5 years probation, and the Government then

---

* Judge Robert L. Kunzig of the United States Court of Claims is sitting by designation.

1. The "controlled substances" in Young's possession were amphetamines, barbiturates, and MDA, an amphetamine derivative.

removed him from his employment, allegedly to promote the "efficiency of the service."

We are here confronted with issues concerning whether Young's conduct impaired the efficiency of the service and whether the additional civil punishment of dismissal "fit the crime."˙ While recognizing the close and difficult nature of the legal questions involved, we are nevertheless constrained, in the peculiar circumstances of this case, to reverse and order back pay and reinstatement for Young.

Plaintiff was arrested in his private home during off-duty hours. He pled guilty, received his 90 day sentence of confinement and later returned to his employment in September 1975. Subsequently, Young was charged with misconduct—off-duty (considered as the first occasion),[2] and was dismissed from his position as a civilian employee of the Government in Rock Island, Illinois. His employment was terminated effective January 9, 1976. Later, the United States Civil Service Commission (hereinafter, defendant or Government), acting through its Federal Employee Appeals Authority in Chicago, Illinois, affirmed the dismissal, April 2, 1976. Plaintiff then filed his complaint for reinstatement and back pay in the United States District Court. On October 21, 1976, U.S. District Judge Robert D. Morgan upheld the dismissal. Plaintiff now timely appeals to this court, which assumes jurisdiction under 28 U.S.C. § 1291.

At the time of his arrest, Young, age 53, had more than 17 years of combined military and civilian service. His work record had been satisfactory at all times. Young had very little contact with the public in performing his job. His supervisor and foreman testified that he had done very good work, and that his ability to perform his job was substantially the same when he returned to work following his conviction. Young had never exhibited any kind of conduct on the job that would have affected

his ability to perform his work. His conviction did not affect the quantity or quality of his work, and did not decrease his superior's opinion of his reliability or trustworthiness.

While Young's conviction was reported in the press, his employer was not named, and the Chief Appeals Officer of the CSC found no "clear evidence" that the Government's reputation suffered as a result of Young's conviction.[3] In addition, the Rock Island County Probation Office supported Young's continued employment as a product inspector.

Plaintiff's vigorous arguments may essentially be distilled into one major point. Plaintiff contends the decisions below were arbitrary and capricious and an abuse of discretion in that there was no evidence in the record whatsoever that Young's discharge would promote the efficiency of the service. Plaintiff further urges that the punishment of dismissal after 17 years of service doesn't "fit the crime."

The Government, of course, denies that the decisions below were in any way arbitrary or capricious, and denies the agency abused its discretion. Defendant's main arguments are based on the overall proposition that discretion was appropriately given under the law to the agency involved, and the power of any court to review this discretion is extremely narrow.

We find in the unique circumstances of this case that the action of the Government has been arbitrary and capricious, and discretion has been abused. We hold for plaintiff.

■ As U.S. District Judge Morgan correctly observed below, the issue of whether an employee's termination will promote the "efficiency of the service" presents an inquiry which invokes the discretion of the administrative agency involved. *See, e. g., Pauley v. United States*, 419 F.2d 1061, 1066 (7th Cir. 1969); *Rifkin v. United States*, 209 Ct.Cl. 566, 584 (1976),

---

**2.** Young's misconduct in this personnel action involved the same offense for which he had been sentenced to 90 days confinement.

**3.** *See* note 9, *infra.*

*cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 545 (1977); *Wathen v. United States,* 527 F.2d 1191, 1197, 208 Ct.Cl. 342, 351–54, (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). Where, as here, the agency's discretion is involved in disciplinary action against that agency's own employee, judicial review "is limited to insuring that required procedures have been substantially complied with and that the action taken was not arbitrary or capricious." *Pauley v. United States,* 419 F.2d at 1065. And, since there has been no allegation in the case now before us that defendant did not comply with all required procedures, our scope of review is even further limited to the sole determination of whether the agency action was arbitrary or capricious as it related to the plaintiff.

Defendant is correct in its assertion that, although the "substantial evidence" standard may once have been the proper method of review in an "arbitrary and capricious" determination, *see Pauley v. United States,* 419 F.2d at 1065, we have since redefined our role in this type of case so that we now review an agency's action only to determine if it has some "rational basis." *Wroblaski v. Hampton,* 528 F.2d 852, 853 (7th Cir. 1976); *Wood v. United States Post Office Dep't,* 472 F.2d 96, 99 (7th Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973). However, this court cannot accept defendant's further implication that the "rational basis" standard is so narrow as effectively to preclude review by this court. The Government virtually argues that mere conviction of a crime gives an agency *absolute* discretionary authority to remove an employee from his job, regardless of whether any connection has been demonstrated between the conviction and the employment. This simply is not a correct statement of the law in this circuit.

Since an agency must make at least two separate determinations in its decision to discipline an individual employee, we are compelled, even under our narrow scope of review, to ascertain if either of those two determinations was arbitrary or capricious. The first judgment which an agency must make is that the individual to be disciplined actually committed the complained of acts (Point I). This is usually a question of facts adduced by the agency at the employee's hearing which tend to show the employee's involvement or participation in the alleged activities. It is these facts which we must review to determine whether the agency had a rational basis for its determination that the employee's misconduct actually occurred. This is the review with which we were primarily concerned in *Wood* and *Wroblaski.*

Once the agency has made a determination that the employee misconduct has, in fact, occurred, it must make a second determination. This second determination, required by 5 U.S.C. § 7501(a), must be to the effect that the disciplinary action taken against the employee will "promote the efficiency of the service,"[4] (Point II). The agency may base this determination also on evidence adduced at the employee's hearing which tends to connect the employee's misconduct with the efficiency of the service; or, in certain egregious circumstances, where the adverse effect of retention on the efficiency of the service could, in light of the nature of the misconduct, reasonably be deemed substantial, and where the employee can introduce no evidence showing an absence of effect on the efficiency of the service, the nature of the misconduct may "speak for itself." Regardless of its basis, however, this second determination is also subject to review and also may be neither arbitrary nor capricious.

While this court has not explicitly addressed this second determination (the misconduct of both Wood and Wroblaski had such a substantial adverse effect on the efficiency of the service that the connection was clear),[5] a determination on our part

---

**4.** 5 U.S.C. § 7501(a) (1970) states:

An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service.

**5.** In *Wood,* a post office foreman was dismissed for participation in the falsification of

that the agency had not been arbitrary or capricious in its decision that the employee's misconduct had impaired the efficiency of the service was a necessary, though implied, linchpin in both the *Wood* and *Wroblaski* decisions. Now, the situation in the instant case compels us to address this very question, the answer to which was subsumed in our earlier decisions. Can there exist a rational basis for dismissal when the adverse effect of the employee's activities cannot reasonably be deemed substantial, when the Government has adduced no evidence whatsoever (save the mere fact of a criminal conviction), and when the evidence which has been introduced at the employee's disciplinary hearing overwhelmingly supports a conclusion that there has been *no* adverse effect on the efficiency of the service?

The door of judicial review stands open, albeit narrowly, and it is the duty of this court to determine whether defendant's action was arbitrary and capricious in this case. Such a determination must begin with an examination of the vital nexus question—whether there was any connection between the employee's activities and the efficiency of the service?

## I.

Under 5 U.S.C. § 7501(a), a federal employee can be discharged or suspended without pay "only for such cause which will promote the efficiency of the service." 5 C.F.R. § 731.202(b)(2) and § 752.104(a) permit disciplinary action against an employee for "criminal, dishonest, infamous or notoriously disgraceful conduct" *if* such action "will promote the efficiency of the service."

We understand plaintiff to be arguing in the instant case that perhaps he could have been discharged or otherwise disciplined for his criminal conviction *if the evidence supported a finding that his discharge promoted the efficiency of the service.* Absent

such a showing, Young urges that his discharge violates the statute and interpretative regulations. Defendant has not produced any statute or regulation which specifies that conviction of a crime shall *automatically* result in discharge of a federal employee without a showing that his discharge will promote the efficiency of the service.

Appendix A, Tables Pertaining to Penalties for Various Offenses, Table I, Civilian Personnel Regulations (CPR) 700 (C14) 751.A (12 March 1973) specifies that removal or suspension may be appropriate for offenses of immoral, indecent, or disgraceful conduct. However, the introductory paragraph to that Table explicitly states that:

"This table of penalties for delinquency or misconduct will be used as a *GENERAL GUIDE* in imposing disciplinary action to assure like penalties for like offenses throughout the Department of the Army. *The list of offenses and suggested penalties set forth below may not successfully meet the demands of all situations and therefore is to be considered as SUGGESTIVE only.*" (emphasis added)

 It is clear that this regulation specifically recognizes each case is to be judged on an individual basis, not upon sweeping generalizations that conviction of a crime automatically impairs the efficiency of the service.

752–1 Federal Personnel Manual (FPM) Supplement Sec. S3–1(a) (July 2, 1974) provides as follows:

a. A cause. Basically a *"cause for disciplinary adverse action is a recognizable offense against the employer-employee relationship.* . . . [W]hat constitutes a proper or valid cause is essentially for the agency to decide. Section 01.3(d) of Executive Order 9830 makes agencies responsible for removing, demoting, or

---

employees' time records (including his own) in the very office which he supervised. In *Wroblaski,* an employee of the Immigration and Naturalization Service was dismissed for employing aliens subject to deportation as domestics in her home. We affirmed both of these dis-

missals. Since 5 U.S.C. § 7501(a) permits discharge of a federal employee only if such action will "promote the efficiency of the service," a necessary implication of these affirmances is that we found each of the dismissals to "promote the efficiency of the service."

reassigning any employee whose conduct or capacity is such that *one of these actions will "promote the efficiency of the service."* (emphasis added)

752–1 FPM Supplement Sec. S3–1(b) (July 2, 1974) further provides as follows:

b. A cause "as will promote efficiency." *Simply having an identifiable cause is not sufficient to warrant adverse action.* In addition, the *action must be "for such cause as will promote the efficiency of the service. . . ."* A just and substantial cause is necessary for an adverse action and the *action must be determined on the merits of each individual case.* Differences in agency missions, in codes of penalties, or in other internal regulations may result in a cause and an action which combine to be perfectly proper in one agency being improper in another. For example, *an offense involving a violation of law, which would warrant removal of a law-enforcement employee in an agency with a mission of law enforcement, might not warrant comparable action against a warehouse forklift operator in another agency.* In every case the agency's action should be based on the conclusion that the adverse action is warranted and reasonable (i. e., the agency has a just cause for the action taken) *and that the agency can establish, or "prove" the facts which support its reason for action.* (emphasis added)

It would thus appear that the essence of this case is whether the agency acted arbitrarily or capriciously in determining that the efficiency of the service was impaired by the action of the plaintiff. It is true that, in the instant case, Young's off-duty misconduct resulted in a felony conviction under the criminal laws of the State of Illinois. However, there has been no showing whatsoever that plaintiff's misconduct impaired the efficiency of the service, nor that retention of plaintiff would negatively affect the operation of his office.

Somewhat surprisingly, this point is most effectively summarized by Mr. Walton, the Chief Appeals Officer for the Civil Service Commission. Mr. Walton wrote in his opinion as follows:

"The evidence to this point shows nothing to indicate that the efficiency of the service would have suffered had appellant been retained on the agency's rolls. His level of performance remained high, and supervisory confidence in his reliability, trustworthiness and general ability was not lessened as a result of his arrest and subsequent conviction. Moreover, while implied, there is found neither clear evidence nor persuasive argument that the reputations of the agency and/or the Federal service adversely suffered as a consequence of appellant's actions; and there is no matter which, in the least, tends to show that appellant is beyond effective rehabilitation. Prior to removal, appellant had completed in access [sic] of seventeen years' unblemished service, and no matter is found which convincingly suggest [sic] that the agency could have reasonably expected appellant's service to deteriorate had he been continued in its employ." Record, vol. 1, at 6. Even more surprisingly, after making the above findings, Mr. Walton affirmed Young's firing, apparently solely as a result of his conviction.

The case of *Schlegel v. United States,* 416 F.2d 1372, 189 Ct.Cl. 30 (1969), *cert. denied,* 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970), extensively discusses the statutory language involved herein. Schlegel was discharged from the Department of the Army as an administrative officer (requiring Top Secret Security clearance) on the basis of alleged homosexual behavior.

Yet the *Schlegel* court, discussing the "efficiency of the service" language and related Army regulations, commented that "Misconduct while off duty does not, in itself, serve as a basis for removal. There must be a showing that the misconduct affected the employee's performance on the job . . .."[6] We bear in mind, of course,

---

**6.** 416 F.2d at 1377, 189 Ct.Cl. at 39, *quoting* applicable Army regulations, CPR S1.3–3 (February 1961) *Guidelines* § c(2).

that Young's misconduct was committed in the privacy of his home while off-duty.[7]

The Government argues firmly that the question of dismissal is entirely within the discretion of the agency, but waffles considerably when it discusses the nexus between Young's offenses and the efficiency of the service. In its brief, defendant sought to establish the required nexus between Young's activities and the efficiency of the service through a referral to a "morale problem" within Young's working group. To accept this asserted nexus would be to ignore the opinion of the CSC's own Appeals Officer, who stated:

> "The morale problem cited by Mr. Nichols obviously was important to his election to recommend appellant's removal from the service. *However, that factor was in no way addressed by the advance notice, and there is no evidence from any source to indicate that it was considered by the agency in reaching its decision to effect the action proposed.* In any event, the problem was not wide spread and, according to Mr. Robert Clemente, one of the agency's foremen, was basically limited to a few employees who "felt that they didn't want Charlie (appellant), if he were (sic) [sic] guilty of what he was accused of, selling (drugs) to their children (TR–p. 62). Since appellant was never tried or convicted of any charge relating to the sale of drugs or "controlled substances," *the opinion of other personnel in this matter would seem to have no bearing as to whether or not appellant's removal was effected for "cause."* (emphasis added) Record, vol. 1, at 6.

Thus, there would appear to be grave doubt whether plaintiff's conduct produced any morale problem at all. Certainly, the total absence of witnesses for the Government at Young's hearing coupled with the many witnesses testifying *for* Young would appear to write *finis* to the suggestion of a morale problem. Indeed, at oral argument, counsel for the defendant conceded that the CSC had found that any alleged morale problem was "irrelevant" to a consideration of the nexus issue.

Defendant's only other contention concerning the nexus analysis is that Young's 90-day sentence led to his absence from work and, thus, impaired the "efficiency of the service." This obvious point not only smacks of "bootstrapping," but it also ignores and obscures the real issue, which is whether the activities of which Young was convicted affected the efficiency of the service. If we were to accept the defendant's argument on this point, we would be accepting a procedure whereby an agency could *suspend* an employee for a relatively minor offense and then *dismiss* that same employee because his absence from work affected the "efficiency of the service." This double punishment for the same "crime" clearly renders such a procedure unacceptable.

In a further effort to bolster its weak position on the nexus issue, defendant has cited a string of cases, all of which are inapposite to our situation here. In *Taffel v. Hampton,* 463 F.2d 251 (5th Cir. 1972), a Fifth Circuit panel, in an abbreviated per curiam opinion, upholding the dismissal of a Post Office Department employee on charges of shoplifting, specifically found that the "evidence was sufficient to support the Commission's determination that Taffel should be discharged to 'promote the efficiency of the service.'" 463 F.2d at 251. In the case at bar, however, we must decide whether a dismissal may stand when the Government has adduced *no evidence whatsoever* tending to show a nexus between the dismissed employee's activities and the efficiency of the service and where that nexus

---

7. The *Schlegel* court upheld the dismissal of plaintiff, but only upon reviewing the evidence produced at the Commission's hearing and concluding that the evidence supported the finding that the plaintiff's removal promoted the efficiency of the service. Although Schlegel was a Veterans Preference eligible employee, the effective language of 5 U.S.C. § 7512(a) (a section of the Veterans Preference Act), requiring that certain adverse action "promote the efficiency of the service," is the same as the effective language of 5 U.S.C. § 7501(a), on which defendant here predicated Young's dismissal.

is not obvious on the face of the facts. Clearly, *Taffel* is of no assistance to us here.

Similarly, in *Madden v. United States Civil Service Commission*, No. C–73–1281 SC (N.D.Cal. Feb. 27, 1974), a district court upheld the dismissal of a Navy employee, whose job involved the loading of live ammunition aboard ships of war, on charges stemming from a civilian drug conviction. The court's decision in favor of the CSC on the nexus issue clearly hinged on the testimony of one of Madden's supervisors to the effect that any drug usage was totally "incompatible with the responsibilities imposed on a winchman handling the loading of ammunition." *Madden, supra* at 7. If any such "linking" evidence had been adduced against Young, we might have a difficult situation here. However, the only evidence put in the record at Young's hearing tended to show that Young's performance continued at a high level and that the efficiency of the service was unaffected. Thus, *Madden* is also of no assistance.

Similar difficulties exist with each of the other cases cited seriatim by the defendant. In *Dew v. Halaby*, 115 U.S.App.D.C. 171, 317 F.2d 582 (1963), *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 550 (1964), the dismissed individual, an admitted drug *user,* was employed as an air traffic controller, a position which, unlike Young's relatively mundane product inspection tasks, required split-second judgment and daily responsibility for many hundreds of lives. In *Embrey v. Hampton*, 470 F.2d 146 (4th Cir. 1972), the discharged employee's fraud was perpetrated on his employer, the Federal Government.[8] Such a situation is clearly inapposite to the case at hand, where Young's activities in his private home had absolutely no connection whatsoever with his employer

(nor was any asserted at the hearing). And, in *Wathen v. United States,* 527 F.2d 1191, 208 Ct.Cl. 342 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976), the dismissed employee was an IRS agent at the time he pursued his mistress across a golf course, as she attempted to flee from his parked car, shot, and killed her in front of numerous witnesses. His picture and IRS affiliation received front page attention in all local newspapers and headline billing on local television news. The tremendous discredit brought upon his employer stands in stark contradistinction to the lack of clear evidence of adverse publicity to plaintiff Young's employer as a result of his activities.[9]

Far from helping defendant's cause, these cases demonstrate exactly the nexus—that vital connection between the employee's complained of activities and some identifiable detriment to the efficiency of the service—which defendant has failed to make any effort to prove in the case at hand. Courts have had little difficulty in upholding dismissals where the nexus was clearly demonstrated or was obvious from the facts.

In *Giles v. United States,* 553 F.2d 647, 213 Ct.Cl. 602 (1977), for example, the dismissed employee was an IRS agent, whose responsibility it was to ferret out delinquent taxpayers who failed to file timely returns. This same agent failed to file timely returns himself over a three-year period. The substantially adverse effect of such behavior on the "efficiency of the service" is not only clear from the facts themselves, but the IRS Collection Division Chief also testified, at the agent's hearing, " . . . that conduct such as plaintiff's would have a deleterious effect upon the

---

**8.** Embrey's fraud against his employer, the Federal Government, was clearly within the definition of a "cause" for discharge as found in 752–1 FPM Supp. § S3–1 (July 2, 1974), which states in pertinent part:

 a. A cause. A cause for disciplinary adverse action is a *recognizable offense against the employer-employee relationship.* (emphasis added)

Young, however, committed no "recognizable offense" against his employer-employee relationship.

**9.** In his written opinion, the CSC Appeals Officer stated: " . . . There is found neither clear evidence nor persuasive argument that the reputations of the agency and/or the Federal service adversely suffered as a consequence of the appellant's actions. . . ." Record, Vol. 1 at 6.

morale of other IRS personnel and upon the respect which other Government agencies and the public had for IRS." 553 F.2d at 650, 213 Ct.Cl. at 607. By such testimony, the connection between the complained of activities and the "efficiency of the service" had been demonstrated, the nexus proven.

An earlier case in this circuit, *Wroblaski v. Hampton, supra,* presented, as we have noted above, the perfect example of a situation in which, because the adverse effects of the employee misconduct on the efficiency of the service were so clearly substantial, a court could properly find a nexus once the facts of the misconduct were proven. Since the effects of Young's activities on the efficiency of the service are anything but clear, the case at hand is not such a case.

■ The insurmountable problem we find in the case at bar is the total failure of the Government to introduce a scintilla of evidence relating to the nexus problem. All evidence brought forward at Young's hearing was adduced by Young; the Government did not deign to call even a single witness or produce any documentary evidence other than the mere fact of Young's conviction. We find the major cases dealing with federal statutes and regulations discussed above uniformly hold that in order validly to discharge a federal employee, 5 U.S.C. § 7501(a) [10] requires that the agency show a reasonable connection between the misconduct of the employee and the efficiency of the service.

■ The court below relies heavily upon the case of *Gueory v. Hampton,* 167 U.S. App.D.C. 1, 510 F.2d 1222 (1974) for the overly broad proposition that a criminal conviction "casts grave doubt on his [an employee's] reliability, trustworthiness and ethical conduct, all of which naturally affect the efficiency of the service. . . . [Thus, a] logical nexus exists between the interpretive regulation and the statutory standard . . .." 167 U.S.App.D.C. at 5, 510 F.2d at 1226. From this the district court draws the conclusion that criminal conduct *without more* provides the neces-

sary nexus between the misconduct and the statutory requirement of "promoting the efficiency of the service."

First, the holding in *Gueory* did not establish the general rule that conviction of a crime alone provides the requisite nexus between the misconduct and the efficiency of the service. *Gueory* expressly recognized that all crimes do not provide the nexus, and that its holding was limited to that particular case:

"In concluding, however, that this logical nexus exists between the interpretive regulation and the statutory standard, we do so with caution. We readily recognize that the nexus may become attenuated if an agency attempts to invoke the regulation for activities of a minor nature, such as a traffic citation. We leave the difficult task of drawing a line of demarcation for a future time. No matter where that line is drawn, it is clear that manslaughter, the unlawful taking of a human life, falls in the area where the nexus is strong and secure . . . *We recognize again that a mere incantation by an agency of the interpretive regulation in a situation involving less serious criminal conduct might necessitate a different result.*" 167 U.S.App.D.C. at 5–6, 510 F.2d at 1226–27. (emphasis added)

The separate opinion of Chief Judge Bazelon in *Gueory* contains an extensive and excellent caution against a blind application of *Gueory*:

"This passage assumes, as does the entire opinion, that the nexus is solely a function of the crime involved. *But the foregoing analysis indicates that the relationship is determined by a number of factors whose interrelationship can be quite complex.* If no specification or analysis of these factors is to be required in these cases, the courts will simply not be in a position to review the critical question of whether the nexus is sufficient to support the regulation's application. My great concern remains that this case sets a dangerous precedent for the automatic imposition of a penalty in addition to that

---

**10.** Or 5 U.S.C. § 7512(a) under the Veterans Preference Act.

already provided for in the criminal code." 167 U.S.App.D.C. at 11, 510 F.2d at 1232. (Bazelon, C. J., separate statement in favor of rehearing *en banc*) (emphasis added)

In addition, the crime involved in *Gueory* was the killing of "a fellow human being when there was no necessity for the killing to have occurred. . . . an act of such violence." 167 U.S.App.D.C. at 3, 510 F.2d at 1224. Appellant in the instant case is charged with no such act of violence.

Thus, not only is the *Gueory* case inapposite to the case at hand because of the wide disparity in the relevant facts, but it specifically warns, in both the majority and separate opinions, against the very practice engaged in by the defendant in the case at bar—dismissal of an employee by the "mere incantation by an agency of the interpretive regulation in a situation involving less serious criminal conduct." 167 U.S.App.D.C. at 6, 510 F.2d at 1227.

In a similar vein, the appellant in *Norton v. Macy*, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969), was discharged from his position as a budget analyst at the National Aeronautics and Space Administration on the basis of immoral conduct and for possessing personality traits which rendered him unsuitable for Government employment.

The *Norton* court repeated the rule that "Congress has provided that protected civil servants shall not be dismissed except 'for such cause as will promote the efficiency of the service.' " 135 U.S.App.D.C. at 216, 417 F.2d at 1163. Although it recognized that "the evidence was sufficient to sustain the charge that, consciously or not, he made a homosexual advance." 135 U.S.App.D.C. at 216, 417 F.2d at 1163, the court reversed the dismissal of the appellant:

*"Since the record before us does not suggest any reasonable connection between the evidence against him and the efficiency of the service, we conclude that he was unlawfully discharged."* (emphasis added) 135 U.S.App.D.C. at 215, 417 F.2d at 1162.

The basis of the decision in *Norton* was exhaustively set forth, and entirely relevant to the instant case:

"The courts have, it is true, consistently recognized that the Commission enjoys a wide discretion in determining what reasons may justify removal of a federal employee; but it is also clear that this discretion is not unlimited. The government's obligation to accord due process sets at least minimal substantive limits on its prerogative to dismiss its employees: it forbids all dismissals which are arbitrary and capricious. . . . In other cases, we have recognized that, besides complying with statutory procedural requirements, *the employer agency must demonstrate some 'rational basis' for its conclusion that a discharge 'will promote the efficiency of the service.'*

. . .

The statute precludes it from discharging protected employees except for a reason related to the efficiency of the service. *Accordingly, a finding that an employee has done something immoral or indecent could support a dismissal without further inquiry only if all immoral or indecent acts of an employee have some ascertainable deleterious effect on the efficiency of the service. . . . Thus, we think the sufficiency of the charges against appellant must be evaluated in terms of the effects on the service of what in particular he has done or has been shown to be likely to do. . . .*

A claim of possible embarrassment might, of course, be a vague way of referring to some specific potential interference with an agency's performance; but it might also be a smoke screen hiding personal antipathies or moral judgments which are excluded by statute as grounds for dismissal. *A reviewing court must at least be able to discern some reasonably foreseeable, specific connection between an employee's potentially embarrassing conduct and the efficiency of the service.* Once the connection is established, then it is for the agency and the Commission to decide whether it outweighs the loss to the service of a particular competent employee. . . .

What we do say is that, if the statute is to have any force, an agency cannot support a dismissal as promoting the efficiency of the service merely by turning its head and crying 'shame.' " (citations omitted) (emphasis added) 135 U.S.App. D.C. at 216–221, 417 F.2d at 1163–68.

█ In the instant case, as in *Norton,* there is only evidence that appellant was guilty of certain conduct. While this evidence may be sufficient to support the defendant's determination that plaintiff, in fact, engaged in the alleged misconduct (Point I), it is clearly not sufficient to support a determination that this particular misconduct in any way impaired the efficiency of the service (Point II). The record here is completely void of any reasonable connection between the evidence against Young and the efficiency of the service. In fact, the overwhelming and uncontradicted evidence in this record is to the effect that the efficiency of the service was not impaired by Young's continued employment. We believe that the instant facts are much more similar to those in *Norton* (and those in the situation of which *Gueory* warns) than to the cases urged upon us as controlling by the Government.

Accordingly, we hold that no nexus has been proven between Young's conduct and the efficiency of the service.

## II.

In addition to his "nexus" argument, plaintiff has also raised the point that, even if the agency's decision to discipline him was *not* arbitrary and capricious, the punishment itself *was,* because it was grossly disproportionate to the employee misconduct involved, that is, because the punishment did not fit the crime. While this

court has not explicitly addressed this disproportionality issue before,[11] it appears as though plaintiff has properly pointed out yet a third distinct determination which must be made by an agency in its decision to discipline an employee: the agency must determine the amount of punishment for specific misconduct.

█ We believe that this determination, too, is very properly committed to the sound discretion of the agency involved; however, it is apparent that in this action, as well as in the previous two, an agency may be so arbitrary and capricious that it abuses that discretion.[12]

The plaintiff has stoutly argued that we should hold that this punishment did not fit the crime and was, therefore arbitrary and capricious. There are several cases which we find persuasive on this point. Cf. *Slowick v. Hampton,* 152 U.S.App.D.C. 319, 470 F.2d 467 (1972) (remanding for determination of appropriate punishment after seriousness of offense ameliorated on appeal); *Boyce v. United States,* 543 F.2d 1290, 211 Ct.Cl. 57 (1976) (determining punishment of dismissal to be unreasonably harsh for minor misconduct by GS–2); *Power v. United States,* 531 F.2d 505, 209 Ct.Cl. 126 (1976) (holding punishment of dismissal to be unduly harsh after seriousness of offense had been ameliorated on appeal to CSC). However, our resolution of the nexus issue in the case at bar renders a decision on this disproportionality of punishment issue unnecessary. We, therefore, leave for another day the exact definition of the line which an agency must cross before a punishment becomes so harsh as to be an arbitrary and capricious abuse of discretion.

---

11. In *Wroblaski v. Hampton, supra,* however, we did, in dealing with a *bias* claim, note that there was evidence in the record to the effect that "separation for this offense was not inconsistent with action taken for other serious offenses." 528 F.2d at 855 n. 6. Evidence of equivalent punishment for similar misconduct could also be relevant to a "punishment fitting the crime" analysis.

12. For example, if an employee were to spill coffee on a Government desk and mar it, the agency could properly determine that the employee had spilled the coffee and might be able to establish some connection between the spilled coffee and the efficiency of the service. However, any attempt by the agency to dismiss that employee for such "misconduct" would clearly be so disproportionate as to amount to an arbitrary and capricious abuse of discretion.

## III.

One additional point has, however, because of an ironic twist of events, become particularly relevant to the plaintiff's contention that his "punishment does not fit the crime" and to our earlier nexus analysis.

■ Relying on our previous decisions, the district judge below made much of the point that the Civil Service Commission is empowered, in its discretion to incorporate in its guiding regulations *its judgment* as to the moral and ethical standards which are essential to efficient federal civil service. It is, therefore, of compelling import that this court take judicial notice [13] of the fact that on September 20, 1977, the day before oral argument in this court, at an open session, the Civil Service Commissioners heard a recommendation by their General Counsel concerning the suitability of applicants for federal positions, and concerning guidelines "to require that an individual nexus analysis be applied to current illegal drug use." The General Counsel recommended that:

"Unless the type of controlled substance is such that the symptoms resulting from its use *may be so* severe that the use of that controlled substance will, in and of itself, be sufficient to justify an adverse suitability determination, *all circumstances surrounding the use of the controlled substance must be examined to determine .whether a rational relationship exists between the individual's conduct and some identifiable detriment to the efficiency of the service.* Such a rational relationship

may arise from factors involving the individual's behavior, and/or from the nature of the employment involved." (emphasis added) [14]

Following discussion, the Civil Service Commissioners approved the General Counsel's recommendation, to be put into effect immediately.[15]

Thus we have the unique fact that, actually even before argument took place in the case at bar, the very agency which upheld dismissal of plaintiff from Government service, the very agency which, in effect, supervises all Government personnel throughout all Government departments, reevaluated its own position. In plain language, it now demands examination of the nexus and proof of some identifiable detriment to the efficiency of the service.[16]

It requires exactly what plaintiff has been arguing.

■ Thus, it would seem that this recent action of the Civil Service Commission clearly speaks for itself and vitiates the very basis of the Government's action against plaintiff. By its reevaluation, the CSC demonstrates that it now recognizes that activities of the type in which Young engaged are not so heinous in nature as to have a substantial adverse effect on the efficiency of the service; that it now recognizes that some proof of nexus is required; and that it now recognizes that the punishment of automatic dismissal (or an automatic determination of non-suitability) may not fit the "crime" of possessing "controlled substances." [17] This recent recognition by

13. Courts have previously considered changes in administrative policy in arriving at decisions related to that policy. *See, e. g., Barnes v. Costle,* 561 F.2d 983 (D.C.Cir. 1977).

14. Minutes of Commission Meeting, Tuesday, September 20, 1977, at 2. These minutes are posted in the Washington, D. C. headquarters of the CSC for public perusal pursuant to 5 U.S.C. § 552(b) (1977).

15. Id. This action of the Commissioners putting into effect the new ruling has been generally reported. Wall St. J., Oct. 4, 1977, at 1, col. 5; Wash. Post, Sept. 24, 1977, at B2, col. 1–2.

16. We would, of course, hold that the *law* has continuously required proof of this nexus. We merely call attention to the newly evolved, "modernized" position of the CSC.

17. The action of the CSC is clearly attuned to new marijuana policy suggestions from the President of the United States. President Jimmy Carter sent his major message on drug policy to Congress last August and formally requested that the federal law be amended to eliminate all criminal penalties for possessing up to one ounce of marijuana.

"Penalties against possession of a drug should not be more damaging to an individual than the use of the drug itself [the Presi-

the CSC that possession (indeed, even use) of "controlled substances" has no automatic substantial adverse effect on the efficiency of the service *renders the proof of nexus which we have required in Part I of our opinion, even more vital and relevant.*

Were there any evidence here that Young was uncontrollable at work, that his behavior was insulting to other employees, that he had developed an absentee pattern which was disgraceful, that he refused to take his job seriously, that he was constantly late, or anything of a similar nature, an identifiable detriment to the efficiency of the service might have been provable and the punishment might have more clearly fit the crime. However, we have no such evidence in this case.

We can only conclude that there was no such detriment. In light of this fact, how can we, in all equity, affirm so serious a punishment? We decline so to do.

The court emphasizes that this opinion should not be read as condoning the behavior which led to Young's conviction.[18]

In summary, while we find it unnecessary to reach the question of whether Young's additional civil punishment "fit the crime," we hold that, in the unique circumstances of this case [where the Government employee introduced uncontradicted credible evidence that his misconduct had no detrimental effect on the efficiency of the service], the mere fact of a criminal conviction for possession of a "controlled substance" and unlawful possession of cannabis (marijuana) does not, without more, prove impairment to the efficiency of the service sufficient to justify the dismissal of a Government employee.

Accordingly, in order that the district court may take appropriate action in the areas of reinstatement and back pay, or institute other additional relief not inconsistent with the above opinion, we

REVERSE AND REMAND.

---

dent told Congress.] And where they are, they should be changed. Nowhere is this more clear than in the law against possession of marijuana in private for personal use." 123 Cong. Rec. 132 (daily ed. Aug. 2, 1977)

Among other leading United States agencies and prominent associations recommending the removal of criminal penalties for the private possession and use of marijuana are:

 National Commission on Marijuana and Drug Abuse (Schafer Commission)
 American Bar Association
 National Conference of Commissioners on Uniform State Laws
 American Public Health Association
 National Council of Churches
 The Governing Board of the American Medical Association
 National Education Association

 Dr. Robert L. DuPont, Director, National Institute on Drug Abuse
 National Association for Mental Health

While this court takes no position on the merits of decriminalization, we would be remiss in not noting that these organizations as well as the CSC, have found a significant difference between the seriousness of the crime of which Young was convicted and the seriousness of some other crimes (such as homicide) which have been found to have substantial adverse effects on the efficiency of the service.

18. Indeed, since 5 U.S.C. § 7501(a) requires proof of nexus only for removal or suspension without pay, nothing in this opinion is intended to contravene the discretionary authority of the appropriate agency to administer a proper lesser penalty.