472 F.Supp. 1081 (1979)
Warren R. GREBOSZ, Plaintiff,
v.
UNITED STATES CIVIL SERVICE COMMISSION and United States Postal Service, Defendants.
No. 78 Civ. 1311 (CHT).
United States District Court, S. D. New York.
June 18, 1979.
*1082 McCarthy & Dorfman, Glen Cove, for plaintiff; Martin S. Dorfman, Glen Cove, of counsel.
Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for defendants; David M. Jones, Asst. U. S. Atty., New York City, of counsel.
Lawrence A. Dinerstein, Senior Asst. Regional Labor Counsel, New York City, for defendants.

OPINION
TENNEY, District Judge.
In this action, Warren R. Grebosz seeks review of an action of the United States Postal Service, affirmed on appeal, discharging him from service as a letter carrier. Both Grebosz and the Government have moved for judgment on the pleadings, Grebosz for reversal of the agency action and the Government for dismissal of the complaint. For the reasons given below, the order of the United States Civil Service Commission ("CSC") affirming Grebosz's discharge is reversed.

Background
On December 2, 1974, Grebosz was arrested and charged with the criminal possession and sale of cocaine. He pleaded guilty to the sale of cocaine and was sentenced to twenty days imprisonment and five years probation. On June 12, 1975, he was arrested and charged with the criminal possession of marijuana, which had been recovered at the time of the first arrest. He pleaded guilty to criminal possession of a controlled substance in the seventh degree, a misdemeanor; he was sentenced to three years probation and fined $250.00. The Postal Service subsequently began removal proceedings based upon the two narcotics charges.[1]

Administrative Proceedings
In a letter dated February 14, 1977, the Postal Service notified Grebosz of its proposal to remove him based on the convictions described above.[2] He answered the notice of proposed removal in person on *1083 February 15, 1977 and in writing on March 9, 1977. On March 11, 1977 the Postal Service notified Grebosz of its decision to remove him effective March 18, 1977. Plaintiff subsequently appealed the removal decision to the CSC and, on October 31, 1977, after a hearing held on June 16, 1977, the CSC issued an opinion affirming the agency action. On March 23, 1978 Grebosz commenced this action for review of that decision, and the case subsequently assumed its current posture.

CSC Decision
After looking to the record to determine whether the Postal Service action was arbitrary, capricious, or unreasonable, the CSC upheld the removal as warranted by the charges. In doing so, it made findings under the criteria set out in 5 C.F.R. § 731.202(c) and additional findings. Given seriatim, those findings under the regulation are summarized as follows:
(1) Grebosz's position as a letter carrier is a sensitive one in that he had daily contact with the public and access to the property of the families on his route.
(2) Grebosz's attorney admitted that the felony sale of cocaine and misdemeanor possession of marijuana are serious offenses, under New York law.
(3) Regarding the circumstances of the conduct, three facts were brought out. First, it occurred in his home during nonworking hours, and it did not involve the families on his postal route nor children. Second, although the arrest for possession of marijuana stemmed directly from the arrest for the sale of cocaine, the charges are separate and, accordingly, Grebosz was involved with drugs on two occasions. Third, the quantity of drugs, which has a direct bearing on the seriousness and nature of the crimes, was very small as to the cocaine and substantial as to the marijuana. The amount of cocaine, 0.6 grams, was "enough for one or two people for their own head to get high." Hearing Transcript 62-63 ("Tr."). The marijuana that led to Grebosz's arrest was 3½ pounds.
(4) The conduct for which Grebosz was removed was not recent; it occurred approximately three years before the removal was proposed. The delay in this case does not relate to any unfairness to Grebosz, but only to the question of the seriousness of the conduct as regarded by the Postal Service.
(5) At the time of the conduct, Grebosz was 25 years old and thus fully responsible for his conduct.
(6) His behavior was influenced by his experiences while serving in the United States Navy off the coast of Vietnam. Drug use among men in Vietnam was a significant problem that was widely publicized.
(7) Grebosz has been rehabilitated since his conduct. He was never in trouble at his job or with the law prior to the conduct in question here, and he has been in no trouble since then. The probation officer involved in Grebosz's case submitted a favorable letter to the Postal Service on the latter's behalf. Further support for a finding that he has been rehabilitated may be found from his work record since his arrests and from his fiscal responsibility. As to the latter, his attorney has stated that Grebosz has promptly paid legal fees and has made voluntary support payments to his ex-wife. Finally, support for this finding may be found in the action of Judge Paul T. D'Amaro, Acting Justice of the Supreme Court of New York: the justice issued Grebosz a Certificate of Relief from Disabilities, which relieves him from disabilities and bars to employment in New York State. App. 6-8.
After setting out the parties' arguments, the CSC made four additional findings:
(1) Grebosz had "an unblemished civilian and military record" before his convictions and has had no trouble since those convictions. Id. 9. He had a good Navy record and received the honors that he alleged he received.
(2) He was at worst a good employee and possibly above-average, as indicated by the Branch Manager's testimony that he had *1084 considered Grebosz for a Superior Performance Incentive Award because of his job performance. (Three superiors testified on Grebosz's behalf, all favorably.)
(3) His superiors did not consider him a threat to the security of the Postal Service or the general public. The Postal Service permitted him to continue working pending the outcome of the arrests.
(4) Finally, as indicated by his superiors and the many letters received from persons on his mail route, Grebosz's conduct did not directly involve or affect his performance of his duties. Id.
Despite its many findings favorable to Grebosz, the CSC upheld his removal. They based their conclusions on the seriousness of the crimes for which he was convicted, the fact that he was twice involved with drugs, and the Postal Service's responsibility to the public to assure that its employees have a high degree of integrity. Id. 7-8.

Arguments
Grebosz argues in essence that his removal was arbitrary, capricious, or not supported by substantial evidence on the record because nothing in the record will support the conclusion that his discharge will promote the efficiency of the service. He contends that his convictions cannot support his removal because they cannot reasonably be expected to impair either his efficiency or that of the Postal Service. Specifically, he argues that the finding of the CSC that he was rehabilitated at the time of his removal is inconsistent with a conclusion that he threatens either the efficiency or the security of the Postal Service. Finally, he argues that the finding that his many meritorious arguments, as established, cannot overcome the gravity of the charges amounts to an automatic removal and that removal, on these facts, is too harsh a penalty. On the law, Grebosz argues that he was denied equal protection of the law because the Certificate of Relief from Civil Disabilities issued by the New York State Supreme Court was not given full faith and credit; and, secondly, that the above certificate should be recognized under the same policy applicable under the Youth Corrections Act.
The Government responds that the sole issue is whether the Postal Service's action was so lacking in rational support as to be arbitrary or capricious. It suggests that Grebosz's involvement with drugs was greater than suggested in the latter's moving papers. On the law, it relies on the narrow scope of review in employee discharge cases and contends that in cases involving criminal conduct the courts have repeatedly upheld dismissals as promoting the efficiency of the service. It contends that the equal protection argument is frivolous, arguing that the certificate on its face does not apply to the employment decision in this case and that, even were it applicable, it could not bind the Postal Service's hands from regulating its own employees.

Discussion
The standard of review in these employee discharge cases is limited. The agency action is subject to judicial review only to determine whether the agency complied with applicable procedures and did not act arbitrarily or capriciously. McTiernan v. Gronouski, 337 F.2d 31 (2d Cir. 1964). Grebosz's reliance on a substantial evidence standard, although appropriate in most circuits, see generally Phillips v. Bergland, 586 F.2d 1007, 1012 (4th Cir. 1978) (citations to circuits using a substantial evidence standard and to those using a rational basis standard), appears to be misplaced in the Second Circuit. The Government's statement of the standard as whether the agency decision "was so lacking in rational support as to be arbitrary and capricious" appears to be a more accurate summary of Second Circuit authority. However, the Court need not address whether, when confronted with the issue squarely and in view of the broader review undertaken elsewhere, the Second Circuit would adopt a *1085 different standard; the agency action here must be reversed under either standard.[3]
5 U.S.C. § 7512 allows an agency to "take adverse action against a preference eligible employee . . . only for such cause as will promote the efficiency of the service." The Postal Service Code of Ethical Conduct, § 442.253 & .255 ("Ethical Code"), provides that "no employee shall engage in criminal . . . conduct" and that the "[i]llegal use of drugs may be grounds for removal from the Postal Service." Because Grebosz has throughout the proceedings admitted that he pleaded guilty to a felony sale of cocaine and a misdemeanor possession of marijuana, a basis for discharge under the Ethical Code has been established. The more difficult inquiry, however, only begins with this determination. The Court must still determine (1) whether the Postal Service must show a connection between the conduct on which the discharge is based and the efficiency of the service, and, if so, (2) whether the Postal Service has shown such a connection.
The circuits have divided on the first question; some identifying the issue as whether the agency has shown a "vital nexus" between the conduct on which the discharge is based and the efficiency of the service. Compare, e.g., Phillips v. Bergland, 586 F.2d 1007 (4th Cir. 1978); Young v. Hampton, 568 F.2d 1253 (7th Cir. 1977), with Turner v. Campbell, 581 F.2d 547 (5th Cir. 1978); Alsbury v. United States Postal Service, 530 F.2d 852 (9th Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); Wathen v. United States, 527 F.2d 1191, 208 Ct.Cl. 342 (1975), cert. denied, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); Gueory v. Hampton, 167 U.S.App.D.C. 1, 510 F.2d 1222 (1974); Vigil v. Post Office Dep't, 406 F.2d 921 (10th Cir. 1969).[4] In Phillips v. Bergland, the Fourth Circuit concluded that an agency may not discharge an employee even when he has committed a criminal act unless a "vital nexus" can be found between the act and the "efficiency of the service." 586 F.2d at 1010-11. The court recognized that the nexus may be obvious on the face of the conduct where that conduct is directly work related, but found a greater burden on the agency where the conduct is not work related and it occurs while the employee is off-duty. Id. at 1011. Finding that the discharge could not stand under either a rational basis or substantial evidence standard, the court reversed the affirmance of a discharge of a Department of Agriculture employee who, during the lunch break, put twine around the neck of a fellow employee in a dispute about a private business in which they were engaged. Similarly, in Young v. Hampton, supra, the Seventh Circuit reversed the discharge of an employee who had been arrested at his private residence while off-duty and convicted of possession of amphetamines, barbiturates, MDA (an amphetamine derivative), and marijuana. Applying a rational basis standard, and after an extensive review of case law and the applicable regulations, the court found no evidence whatsoever of a nexus between the conduct and the efficiency of the service and found that the nexus was not obvious on the face of the facts. 568 F.2d at 1260, 1262, 1264.
*1086 Gueory v. Hampton, supra, on which the Government relies in part, presented the question whether a discharge on the basis of a manslaughter conviction was valid where there was no showing of an explicit deleterious effect on the efficiency of the service. In upholding a regulation making criminal conduct a cause for discharge, the court reasoned that an employee's conviction of a crime "casts grave doubt on his reliability, trustworthiness and ethical conduct, all of which naturally affect the efficiency of the service." 167 U.S.App.D.C. at 5, 510 F.2d at 1226. The court concluded that the conviction of a serious crime supplies the requisite nexus between the conduct set out in the regulation and the statutory standard of promoting the efficiency of the service. It cautioned, however, against similar conclusions where the crimes are less serious, as where a mere traffic violation is involved. In such a case, the nexus may have become too attenuated to support a discharge. Id. It recognized that "a mere incantation by an agency of the interpretive regulation in a situation involving less serious criminal conduct might necessitate a different result." Id., 167 U.S.App.D.C. at 6, 510 F.2d at 1227.
In Wathen v. United States, supra, the Court of Claims appeared to approve of Gueory v. Hampton, but it applied less rigorous review to the discharge of an IRS employee who killed the woman he intended to marry, but who was acquitted on the ground of insanity. The court affirmed the discharge because it found substantial evidence that the employee had killed the woman and discredited the agency. It concluded that it was not its function, but rather the agency's, to determine whether the killing and consequent discredit to the IRS impaired the efficiency of the service. Id. at 1198-99. One judge, in an extensive dissent, criticized especially the majority's conclusion that the court has no role in determining whether there is a sufficient nexus between the conduct and the efficiency of the service. Two of seven judges dissented from an order denying motions for rehearing. Id. at 1207 nn. A third judge concurred with the result in the case, but found it "anomalous to have a single separate area of decision making excluded from judicial review when such exclusion is not based on express statutory provisions, absent here." Id. at 1207.
In Alsbury v. United States Postal Service, supra, on which the Government partly relies, the court applied a substantial evidence test in affirming the dismissal of an employee based on misappropriation of postal property. Because the nexus between the efficiency of the Postal Service and theft of its property is obvious, this case is inapplicable to the instant facts.
The Government also relies on cases from the tenth and fifth circuits. In Vigil v. Post Office Dep't, supra, the Tenth Circuit affirmed the discharge of a Postal Service employee based on homosexual conduct and his conviction for that conduct. The court found substantial evidence to support the charge and concluded that further judicial intrusion into the daily operations of a government agency is unwise. 406 F.2d at 924-25. It did not address the nexus question directly. In Turner v. Campbell, supra, the Fifth Circuit refused to order the reopening of an action involving an employee who had been convicted of attempted burglary. The court concluded that, where there has been substantial compliance with applicable procedures, the administrative determination is not reviewable. 581 F.2d at 548; accord, Taffel v. Hampton, 463 F.2d 251 (5th Cir. 1972) (per curiam). In reaching that conclusion, the court relied on Anonymous v. Macy, 398 F.2d 317 (5th Cir. 1968) (per curiam), which in turn relied on an older line of cases from the District of Columbia Circuit that are now of questionable authority.
Based on the Court's reading of 5 U.S.C. § 7512 and the above authorities, it concludes that it must find some nexus between the crimes of which Grebosz was convicted and the efficiency of the service. The court is mindful of the general reluctance of courts to interfere with agency actions, but it may not abdicate its responsibility to decide whether, within the limited *1087 review of such employee discharge cases, the agency has complied with the applicable statutes and regulations.
The strongest support for Grebosz's argument that his conduct has not impaired the efficiency of the Postal Service can be found in the CSC decision. Although it held against Grebosz, its specific findings, which the Court finds to be supported by the record, are largely favorable to him. Especially favorable to him are its findings that he had not been in trouble with the law or on the job before or after the conduct in question and that he was rehabilitated (7th finding), that he was at worst a good employee (2d additional finding), and that his conduct did not directly involve or affect his job performance (4th additional finding). The decision reflects that the record is utterly devoid of evidence linking the conduct with the efficiency of the agency. The evidence that he was at all times, which includes nearly three years after the conduct, a good employee is overwhelming. The Postal Service was either unwilling or unable to counter this evidence other than by relying on the convictions, their seriousness, and the agency's public duty.[5]
Thus narrowed, the question is essentially whether Grebosz's convictions are alone sufficient to support the discharge. In this and other regards, the instant case presents facts much like those in Young v. Hampton, supra, where a conviction for possession of various drugs was held insufficient to sustain a discharge. There, the employee was convicted only once; here, however, the employee was convicted twice, a fact on which the CSC relied. App. 10. Although two convictions quite naturally militate more strongly against an employee than just one conviction, this distinction would be a superficial basis for reaching a different result here because the defendant in Young was convicted of possession of amphetamines, barbiturates, MDA, and marijuana, 568 F.2d at 1255, and the reasonable inference is that Young did not intend to consume all of them in a single instance of criminal conduct. The record in Grebosz's case does not indicate greater involvement with drugs, despite the technicality of two convictions. Grebosz's arrest for marijuana possession stemmed directly from his arrest for cocaine. He gave the police the marijuana when he was arrested for the sale of cocaine, and although the charges are separate, App. 7, the gravity of Grebosz's conduct is heightened little or none at all beyond Young's by the second, separate arrest. After his initial arrest, Grebosz had, as far as the record indicates and the CSC found, no further involvement with drugs: he was rehabilitated. Id. at 8.
A second feature appearing to distinguish the instant case from Young is the nature of the offenses: one of Grebosz's convictions was for the sale of a narcotic. Although a sale under N.Y. Penal Law § 220.39 (McKinney Supp. 1978) is regarded as a more serious offense than mere possession under id. § 220.09and has been deemed particularly serious under New York lawthis distinction, too, does not dictate a result different from that in Young. Unless the Court is to resort merely to labels as indicators of the gravity of offenses, it cannot ignore the circumstances of the instant transaction. First, the amount of drugs sold was very small, as found by the CSC. Id. at 7. Second, the circumstances leading to the sale do not *1088 suggest a greater threat here than in Young to the Postal Service's efficiency or the public. Grebosz was apparently using the drugs in an attempt to enhance a failing marriage. Although his story is not entirely consistent on this point, he decided to get rid of the small quantity of cocaine that he had left. He invited a friend to come to Grebosz's home; that person brought someone identified as his cousin. Grebosz sold him the cocaine for $65.00. Compare App. 62 with id. 76. Although such circumstances, however interpreted, do not convert the crime into a minor infraction, it does not suggest such substantiality of criminal conduct to distinguish the instant facts materially from those in Young.
As in Young, the Government here relies on Gueory v. Hampton, supra. In Gueory, the court did not dispose of the nexus requirement, but rather it concluded that sufficiently serious criminal conduct without more raises the nexus between the conduct and the efficiency of the agency. Manslaughter, the conduct in Gueory, can be more readily seen to supply the requisite nexus than the conduct in the instant case. Accord, Young v. Hampton, supra, 568 F.2d at 1263. And, while the following facts do not necessarily distinguish Gueory, they and the circumstances of the sale as set out briefly supra do bear on the question whether Grebosz's conduct was so serious that the nexus should be presumed. First, the Postal Service continued to employ him after it was aware of the charges against him, CSC Decision, App. 7-9. The Government rightly argues in essence that the Postal Service is not compelled to suspend or discharge an employee immediately after such conduct, Memorandum at 11 n. The Court doubts, however, that the Postal Service would have continued to allow Grebosz to carry mail to the public had it believed that he was a threat to the public. Second, the New York State Supreme Court Justice who sentenced Grebosz for the sale of the cocaine apparently did not find his crime, under the circumstances, particularly heinous Grebosz was sentenced to only twenty days imprisonment and five years probation. And third, the justice issued him a Certificate of Relief from Civil Disabilities, this too suggesting that the justice did not view Grebosz as a threat to the public. The CSC relied on this certificate in its finding that Grebosz was rehabilitated. App. 8.
Drawing lines between the gravity of various offenses, which Gueory necessitates, is a difficult basis for decision[6] and one of questionable merit. If a crime is "serious," presumably its gravity, in the context of particular cases, will enable agencies to articulate the bases for their conclusions that discharges will promote efficiency. Here, the Postal Service appears to prefer to rest on the seriousness of Grebosz's offenses without explaining how Grebosz threatens its efficiency.
The Court also does not find persuasive Gueory's broad proposition that "an employee's conviction of a crime casts grave doubt on his reliability, trustworthiness and ethical conduct, all of which naturally affect the efficiency of the service." 510 F.2d at 1226. To the extent that such a proposition does have merit and does give rise to a presumption that the efficiency of the Postal Service has been impaired, that presumption has been resoundingly rebutted in this case by the record as a whole. The many testimonials to Grebosz's efficiency and good character from his customers, the testimony of his superiors as to his efficiency, and his military, civilian, and occupational record as a whole lead only to one conclusion: Grebosz adds to the efficiency of the service. Moreover, while the Postal Service, even in the face of such a record, might have been able to offer evidence or explain why his continued employment would nonetheless impair the efficiency of the service, see Phillips v. Bergland, supra, *1089 586 F.2d at 1011 (greater burden on agency where conduct not work-related); Gueory, supra, 510 F.2d at 1230 (Bazelon, J., dissenting to denial of rehearing en banc, concluded, inter alia, that the strength of Gueory's showing called for a rebuttal from the agency); Yacovone v. Bailar, 455 F.Supp. 287 (D.D.C. 1978) (sufficiently strong showing requires agency to establish close connection between removal and promoting the efficiency of the service), the Postal Service chose not to do so.[7]

Conclusion
The Postal Service has failed to offer any evidence whatsoever that its discharge of Grebosz will promote the efficiency of the service. Grebosz has overwhelmingly shown that he is a threat to neither the efficiency of the Postal Service nor its customers. On the record as a whole, the Court finds that the discharge was arbitrary, capricious, and lacking in a rational basis. Accordingly, the order of the CSC is reversed, and Grebosz must be restored to his position as a letter carrier with full back pay and with full restoration of all pension rights and benefits.[8]
So ordered.
NOTES
[1] Further background concerning the drug use and arrests will be given in the text infra.
[2] The CSC found that the specifications regarding the convictions were incorrectly stated in the notice: the Postal Service basically reversed the facts regarding the dates of the guilty pleas and the sentences for each conviction. Government's Appendix at 4 ("App."). The CSC found, however, that proper procedures had been complied with and that Grebosz had had proper notice and opportunity to reply to the notice. Id. at 5-6. Grebosz is not challenging the validity of the procedures employed in his case.
[3] In very different circumstances, the Second Circuit used the McTiernan standard in vacating an injunction prohibiting the Federal Aviation Administration from taking any disciplinary action against air traffic controllers engaged in a work stoppage. United States v. Professional Air Traffic Controllers Organization, 438 F.2d 79 (2d Cir. 1970), cert. denied, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971). Initially the court stated the agency's authority over its employees broadly: "The FAA has the power to discipline its employees without judicial interference." Id. at 80. It then modified the statement when relating that authority to the facts of the case:

Discipline based upon the finding that the employees' work stoppage was unlawful is clearly within the power of the administrative agency. If the agency's action in any individual case should prove to be arbitrary or capricious it would be subject to administrative and eventually judicial review.
Id. at 81 (citation omitted). Grebosz presents a case where, unlike in the above case, the employee's conduct was not related to his duties.
[4] See also note 3 supra.
[5] The Government draws the Court's attention to testimony to the effect that Grebosz may have been a small dealer. Memorandum at 4-5. On the record, there is a serious question whether such a finding could be sustainedbeyond the one sale for which Grebosz was convicted but the more serious objection is simply that neither the Postal Service nor the CSC relied upon such a finding. Rather, they relied upon the seriousness of the crimes charged and the agency's responsibility to the public. App. 9 (Postal Service's position as given by CSC); Tr. 4 (Postal Service's own statement of its position); App. 9-10 (CSC conclusions). The Court may not "`accept . . . counsel's post hoc rationalizations for agency action'; for an agency's order must be upheld, if at all, `on the same basis articulated in the order by the agency itself.'" Federal Power Commission v. Texaco Inc., 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974), quoting Burlington Truck Lines, 371 U.S. 156, 168-69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).
[6] One district court distinguished Gueory in granting summary judgment to an employee who had been removed for shoplifting. Yacovone v. Bailar, 455 F.Supp. 287 (D.D.C. 1978). The court relied on the fact that the employee was pardoned for his crime, and it considered Gueory a narrow exception to the requirement that there be a specific connection between the removal of the employee and the efficiency of the service. Id. at 289-90, relying on Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969).
[7] The Court does not rely on, but notes Congress's attitude toward, the discipline of conduct unrelated to job performances, as expressed in the legislative history to the Civil Service Reform Act of 1978, Pub.L. 95-454, 91 Stat. 1111: Under the adopted, modified House provision,

conviction of a crime may be taken into account when determining fitness or suitability of an employee or applicant. This provision is not meant as an encouragement to take conviction of a crime into account when determining the suitability or fitness of an employee or applicant for employment. Nor is it to be inferred that conviction of a crime is meant to disqualify an employee or an applicant from employment. The conferees intend that only conduct of the employee or applicant that is related to the duties to be assigned to an employee or applicant or to the employee's or applicant's performance or the performance of others may be taken into consideration in determining that employee's suitability or fitness. Conviction of a crime which has no bearing on the duties to be assigned to an employee or applicant or on the employee's or applicant's performance or the performance of others may not be the basis for discrimination for or against an employee or applicant.
H.R.Conf.Rep. 1717, 95th Cong., 2d Sess. 131, reprinted in 1978 U.S. Code Cong. & Admin. News, pp. 2723, 2864 (emphasis added). Focusing on the facts that the conduct in the instant case is not related to Grebosz's duties and did not affect his job performance appears consistent with the approach signaled under the new law.
[8] Because of this conclusion, the Court need not address Grebosz's arguments as to the severity of the punishment, the equal protection clause, or his analogy to the Youth Corrections Act.