Neil A. RINGQUIST, Plaintiff-Appellant,

v.

Robert E. HAMPTON, Chairman, United States Civil Service Commission, and the United States Civil Service Commission, Defendants-Appellees.

No. 77–2051.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1978.

Decided Aug. 24, 1978.

**7. Internal Revenue ⇔1221**

Record, in action challenging plaintiff's discharge from his position as auditor for the Internal Revenue Service, including taxpayer affidavits which showed that there was a lack of documentation with regard to deductions which plaintiff stated were verified as substantiated, contained sufficient basis for discharge.

R. LaMar Bishop, Chicago, Ill., for plaintiff-appellant.

Martin B. Lowery, Assistant U. S. Atty., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and SWYGERT, Circuit Judge.

CASTLE, Senior Circuit Judge.

The issue in this appeal is whether plaintiff was properly discharged from his position as an auditor for the Internal Revenue Service (IRS). The district court upheld the discharge. We affirm.

I.

On June 30, 1975, plaintiff Neil Ringquist received notice from the IRS of a proposed action to discharge him for making false statements in his audit reports. The notice listed seventeen specifications which detailed deductions on various tax returns which plaintiff had listed as verified or substantiated but for which inadequate or no documentation existed. All of the specifications concerned tax returns completed by a tax preparer who, as plaintiff was aware, was under investigation for possible tax fraud. Plaintiff responded to the notice by written answer and affidavits claiming his statements were true according to his view of the proper technical definitions and auditing techniques and that he relied upon representations made to him by the tax preparer. On September 22, 1975 the

agency sustained fourteen of the seventeen specifications and Ringquist was removed from his position. On October 2, 1975, plaintiff appealed the IRS discharge to the United States Civil Service Commission which, after a hearing, upheld the agency action. Following the refusal of the Civil Service Commission Appeals Review Board to reopen the case, Ringquist brought suit in the federal district court seeking reinstatement and back pay. The district court granted defendants' motion for summary judgment. This appeal followed.

II.

■ We must first address the issue raised as to the appropriate standard of review. In government employee discharge cases, the scope of review usually is limited to insuring that the proper procedures were followed and that the discharge was not arbitrary and capricious. *Pauley v. United States,* 419 F.2d 1061, 1065 (7th Cir. 1969). Normally, an agency discharge decision is not arbitrary or capricious where the record shows a "rational basis" for the action. *Young v. Hampton,* 568 F.2d 1253, 1257 (7th Cir. 1977); *Wroblaski v. Hampton,* 528 F.2d 852, 853 (7th Cir. 1976); *Wood v. United States Post Office Department,* 472 F.2d 96, 99 (7th Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973). However, in this case, plaintiff argues that the more demanding "substantial evidence" standard is mandated. As a basis for the claim, plaintiff states that he is a "preference eligible employee" under 5 U.S.C. § 7511 and, consequently, is entitled to appeal any "adverse action"[1] by an agency to the United States Civil Service Commission. 5 U.S.C. § 7701. Accordingly, Ringquist contends that since a termination hearing is "required by statute," 5 U.S.C. § 554, a reviewing court should set aside the agency action if it finds that the action is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E).

---

1. An "adverse action" is defined by § 7511(2) as "a removal, suspension for more than 30 days, furlough without pay, or reduction in rank or pay."

At first glance, there is some attractiveness to plaintiff's theory. In *Wroblaski v. Hampton, supra* at 853 n.1, this court noted that one reason for applying the rational basis standard over the substantial evidence standard was that § 706(2)(E) did not apply where an agency hearing was not required by statute. However, as pointed out in *Wood v. United States Post Office Department, supra* at 99 n.3, § 554(a)(2) exempts employee tenure decisions from the operation of §§ 556 and 557 and, therefore, from the substantial evidence standard of § 706(2)(E). In this context, § 7701 apparently was designed merely to give nonprobationary employees the right to have adverse actions reviewed by the Civil Service Commission and was not intended to trigger, ultimately, the provisions of § 706(2)(E). We therefore adhere to the standard enunciated in our prior decisions: reinstatement of a government employee will be ordered only where the discharge is not supportable on any rational basis.[2] *Pauley v. United States, supra* at 1066. *See also Brown v. Zuckert*, 349 F.2d 461, 463 (7th Cir. 1965), *cert. denied*, 382 U.S. 998, 86 S.Ct. 588, 15 L.Ed.2d 486 (1966) (discharge of veterans' preference eligible).

### III.

Following this standard of review, we must initially determine if the required procedures have been followed. Appellant does not appear to argue that he was denied the procedures required by the applicable statutes and regulations: notice of the reasons for the proposed adverse action by the agency; a reasonable opportunity to answer; notice of the actual adverse action; and an appeal to the Civil Service Commission. § 7512(b); § 7701; 5 C.F.R., Part 752B. Rather, his procedural arguments

apparently are directed toward challenging the constitutional validity of using taxpayer affidavits in support of the charge and denying him access to the full investigative reports on the returns in question.

First, plaintiff argues that the government's use of seventeen taxpayer affidavits before the Commission to support the specifications against him violated his due process rights of confrontation and cross-examination. We note at the outset that the due process clause is flexible and requires only "such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). As stated in *Arnett v. Kennedy*, 416 U.S. 134, 157, 163, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the post-dismissal administrative procedures followed in government employee discharge cases are generally sufficient to protect the employee's interest in not having his reputation injured by a wrongful discharge and these do not require strictly applied rules of evidence.[3] While we agree with plaintiff that careful adherence to proper procedures is especially warranted where a government employee is charged with making false statements, *see Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), we find that goal was accomplished here. The Code of Federal Regulations provides for statements of witnesses to be by affidavit whenever practicable. 5 C.F.R. § 772.305(a). Reading that provision together with the right of cross-examination guaranteed in § 772.307(c)(3) shows that the regulations contemplate cross-examination of those witnesses who are actually called, rather than forcing all affiants to appear for cross-examination.[4] Under the circumstances of this case, we do not feel this procedure constituted a deprivation of due process.

---

**2.** It is doubtful that the more demanding standard would affect the decision here since the district court also found substantial evidence to support the discharge. (Mem.Op. at 7.) *See also Wood v. United States Post Office Department, supra* at 99 n.4.

**3.** We are aware that the Court in *Arnett* was dealing with a discharge under § 7501 while plaintiff in the present action was a preference

eligible under § 7701. However, we do not find a constitutional difference between the employee's interest in that case and plaintiff's interest here. Both cases are concerned with the effects of wrongful discharge.

**4.** Plaintiff's representative at the Commission proceedings fully cross-examined the three witnesses called by the IRS. (R. 7, Part II, pp. 45, 95, 117.)

Affiants were taxpayers and the Commission is not authorized to subpoena nonemployee witnesses. 5 C.F.R. § 772.307(c)(2). Also, although the reliability of the taxpayer affidavits was questioned by plaintiff, the affidavits do not contradict Ringquist's explanation of the audit discrepancies.[5] Plaintiff's theory of defense is that although the taxpayers did not have the documents to support the deductions which plaintiff found to be technically "verified," he innocently received the necessary verification from the tax preparer. (Appellant's brief at 22.) Thus, it was unnecessary for plaintiff, in this case, to test the reliability of the affiants by cross-examination.[6] In light of these facts, the cases cited by plaintiff are distinguishable. *McNeill v. Butz,* 480 F.2d 314, 317 (4th Cir. 1973) (no affidavits from unknown government informers); *Hanifan v. United States,* 354 F.2d 358, 363–64, 173 Ct.Cl. 1053 (1965) (affiants were agency employees); *Henley v. United States,* 379 F.Supp. 1044, 1052 (M.D.Pa. 1974) (written statements permissible but lacking "rational probative force").

5. Plaintiff suggests that the affidavits were secured from the taxpayers improperly and in violation of the taxpayers' rights. In the context of this case, we need not comment on plaintiff's standing to assert the taxpayers' rights. *Cf. Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (some constitutional rights may not be vicariously asserted). We also note that since the taxpayer affidavits were statements against their interest, admissions that proper documentation did not exist for claimed deductions, they bear some independent indicia of reliability.

6. A controversy developed at oral argument which warrants some discussion at this point. There is a statement in plaintiff-appellant's brief that when giving the taxpayer affidavits to plaintiff the IRS admonished Ringquist not to disclose the names of the taxpayers to his attorney since they were "confidential." (Appellant's Brief at 16.) The only factual document cited by plaintiff to show he was so admonished is the agency notice of proposed action which states, in general terms, that plaintiff should refer to the taxpayers by their letter codes when discussing his case with persons outside the Treasury Department.

At oral argument, neither counsel was able to elucidate the status of the record on this point. Therefore, we have independently reviewed the record and discovered only one other reference

Plaintiff's second due process argument is that he was denied access to certain portions of relevant investigative reports. These reports apparently related to the tax returns in question and were part of the total investigation of the target tax preparer. 5 C.F.R. § 752.202(a)(2) states that the employee should be provided documents and investigative reports relied on to support the reasons given for the adverse action. As noted by the district court, the government certified by letter that plaintiff had received all material upon which his discharge was based. (Mem.Op. at 3.) It is not a violation of due process to withhold those portions of investigative reports which were not used to support the discharge. *See Moore v. Administrator, Veterans Administration,* 155 U.S.App.D.C. 14, 16, 475 F.2d 1283, 1285 (1973).

### IV.

Having found that the proper procedures were followed, we must determine

to plaintiff being forbidden to give the names of affiants to counsel. That reference is in Ringquist's reply letter to the agency where plaintiff relates how his counsel was forbidden to accompany him to a pre-notice investigatory interview. (R. 7, Part III, pp. 657–59.) However, that document also states that plaintiff's counsel was later present when the IRS inspector read the taxpayers' names. *Id.* at 659.

Thus, while it is unclear whether plaintiff's lawyer was actually given full access to the affiant taxpayers' names, it is clear that plaintiff cannot now claim procedural error on that basis. There is nothing to show that plaintiff objected to this restriction, if any, on his counsel at the agency level or that the restriction was carried over to the Commission appeal. Moreover, as stated by his counsel at oral argument, it is plaintiff's main argument that it was error for the agency to fail to produce affiants for cross-examination. In any event, as pointed out above, since plaintiff's theories of defense are not in conflict with the affidavits, plaintiff would gain nothing by calling the taxpayers. Therefore, while we would hesitate to affirm an administrative procedure which prevents an employee from himself seeking further testimony of persons who have already given statements on the record, in this case there is no evidence that Ringquist or his attorney actively sought that testimony.

whether the record contains a rational basis for the discharge. Plaintiff was discharged for making false statements in his audit reports. More specifically, plaintiff was found to have stated in fourteen separate instances that certain deductions were verified or substantiated when the actual documentation could support only a portion of the deduction or none at all. In support of that charge, the IRS elicited testimony from two agency officials as to proper auditing techniques and terminology. (R. 7, Part II.) Also, the record contains taxpayer affidavits which show that there was a lack of documentation with regard to the deductions which plaintiff stated were verified as substantiated. (R. 7, Part III, pp. 453–601.) Finally, the evidence shows that plaintiff was aware that the tax preparer involved in the fourteen specifications was under investigation for possible tax fraud. (R. 7, Part II, pp. 31, 84, 134–37.)

Plaintiff suggests that the evidence, or lack of it, could also be viewed as showing that he followed what he believed to be accepted auditing practices, that the tax preparer gave him fraudulent documents which he innocently relied upon in verifying or substantiating the deductions, and that the discrepancies in the audit reports were mistakes caused by overwork. To accept this possible interpretation of the record would be beyond the scope of our review. *See Pauley v. United States, supra* at 1066. The evidence of when an auditor should state that a deduction has been verified, together with the absence of required documentation and plaintiff's knowledge of the ongoing investigation is rational evidence to support the Commission's conclusion. The Commission could infer the requisite intent from this evidence. Therefore, we find that the record shows there was at least a rational basis for concluding that plaintiff knowingly made false statements on the audit reports and, consequently, the Commission's decision to uphold the discharge was not arbitrary or capricious.

For the reasons stated above, the judgment of the lower court is affirmed.

AFFIRMED.