Benjamin LUNETTO, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 82 C 5288.

United States District Court, N.D. Illinois, E.D.

March 31, 1983.

Charles Travis, Travis, Tucker, Pavesich & Assoc. Ltd., Schaumburg, Ill., for plaintiff.

Martin B. Lowery, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Benjamin Lunetto, Jr. ("Lunetto") has sued the United States pursuant to 28 U.S.C. § 1346(a)(2),[1] 28 U.S.C. § 1331,[2] 5

---

1. 28 U.S.C. § 1346(a)(2) states that:

 (a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

 \* \* \* \* \* \*

 (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Con-

U.S.C. § 701,[3] the Fifth Amendment, and 28 U.S.C. § 1361,[4] seeking monetary damages and reinstatement to his employment as a Facilities Maintenance Manager in the Navy Exchange Service. Presently pending before the Court is the United States' motion to dismiss Lunetto's First Amended Complaint,[5] or in the alternative for summary judgment. For reasons set forth below, the United States' motion for summary judgment as to Count II is granted; the United States' motion to dismiss is granted as to Counts I and III.

## Facts

Lunetto had been employed as the Facilities Maintenance Manager of the Navy Exchange at Great Lakes, Illinois. On September 2, 1980, he received, in the form of a letter, a thirty day advance notice of proposed disciplinary action and suspension. The notice charged Lunetto with a first offense of the unauthorized use of government facilities, property and manpower, in violation of Navy Regulations. On September 5, 1980, Lunetto was terminated from his position effective October 2, 1980, in a letter from the Naval Exchange Officer, Captain L.C. Gray. Captain Gray affirmed his decision in a letter dated September 26, 1980. A hearing was conducted on March 16, 1981, before hearing Officer John J. O'Connor at the Naval Training Center, Great Lakes. Based upon evidence presented, O'Connor recommended that Captain Gray's decision be sustained. The Commanding Officer of the Naval Administrative Command affirmed the decision to terminate Lunetto in a letter of April 28, 1981. On March 24, 1982, the Commander of the Navy Resale and Service Support Office upheld the termination, finding Lunetto's termination to be neither arbitrary, capricious nor an abuse of discretion. Lunetto thus exhausted all administrative remedies available to him prior to filing the instant lawsuit.

## Legal Standards
### Motion To Dismiss:

In deciding the instant motion to dismiss, we must take the allegations of Lunetto's complaint as true and view them, and any

---

tract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

2. 28 U.S.C. § 1331 provides that:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

3. 5 U.S.C. § 701 provides, in pertinent part, that:

(a) This chapter applies, according to the provisions thereof, except to the extent that—
 (1) statutes preclude judicial review; or
 (2) agency action is committed to agency discretion by law;
(b) For the purpose of this chapter—
 (1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—
 (A) the Congress;
 (B) the courts of the United States;
(C) the governments of the territories or possessions of the United States;
(D) the government of the District of Columbia;
(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;
(F) courts martial and military commissions;
(G) military authority exercised in the field in time of war or in occupied territory; or
(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; chapter 2 of title 41; or sections 1622, 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix; and
(2) "person", "rule", "order", "license", "sanction", "relief", and "agency action" have the meanings given them by section 551 of this title.

4. 28 U.S.C. § 1361 states that:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

5. This Court granted Lunetto leave to amend his complaint on December 28, 1982.

reasonable inferences to be drawn from them, in the light most favorable to him. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). A complaint should be dismissed, moreover, only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

*Motion For Summary Judgment:*

In support of a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in his favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). The nonmoving party is entitled to all reasonable inferences that can be made in its favor from the evidence in the record. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric,* 295 F.2d 573, 576 (7th Cir.1961). In deciding motions for summary judgment, courts look beyond the pleadings and examine exhibits, affidavits and other materials; this contrasts with treatment of motions to dismiss under Fed.R.Civ.P. 12(b)(6), which are based almost entirely upon the pleadings. 10A C. Wright & A. Miller, Federal Practice and Procedure § 272 (2d ed. 1983).

It is with these standards in mind that we consider the government's alternative motion.

### Count I

Count I of Lunetto's amended complaint, which is based upon 28 U.S.C. § 1346, alleges that he had an implied contract with the Naval Exchange based upon: 1) a Navy Regulation providing that employees are to be made whole financially upon appeal of adverse actions; 2) the duties delegated to him as a supervisor, in addition to those of his job classification; 3) Naval Exchange regulations governing the conditions of his employment. The government argues that *Army and Air Force Exchange Service v.*

*Sheehan,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), precludes the existence of an implied-in-fact contract based upon the aforementioned sources.

■ Lunetto was employed by the Navy Exchange Service. Although not funded by Congressional appropriations, *Johnson v. United States,* 600 F.2d 1218, 1221 (6th Cir.1979), military exchanges are governmental entities essential for the performance of government functions, and they are thus entitled to any immunities from suit enjoyed by the United States. *Standard Oil Co. of California v. Johnson,* 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942); *see also Champaign-Urbana News Agency v. J.L. Cummins,* 632 F.2d 680, 692 (7th Cir.1980) (Army and Air Force Exchange Service is entitled to immunity from Robinson-Patman Amendments to the Clayton Act). It is well established that the United States cannot be sued without its consent. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Clark v. United States,* 691 F.2d 837, 839 (7th Cir.1982). Unless Congress has expressly consented to a suit against the United States, courts lack jurisdiction to entertain such lawsuits. *United States v. Sherwood,* 312 U.S. 584, 587–88, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). We must thus consider whether we have jurisdiction over Lunetto's claim for monetary damages.

■ In Count I, Lunetto argues that the Tucker Act, 28 U.S.C. § 1346(a)(2), *see* note 1, *supra,* acts as a waiver of the United States' sovereign immunity. The Tucker Act is indeed an explicit waiver of sovereign immunity, *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 102 S.Ct. 2118, 2122, 72 L.Ed.2d 520 (1982), but it is solely a jurisdictional statute and does not create any substantive right enforceable against the United States for monetary damages. *United States v. Testan,* 424 U.S. at 399, 96 S.Ct. at 953. Lunetto therefore argues that Navy Regulations, supervisory duties and Naval Exchange Regulations created an implied contract between him and the United States providing

him with a right to monetary damages and enabling him to invoke the Tucker Act as a jurisdictional basis for Count I. In *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), the Supreme Court held that the Tucker Act does not convey jurisdiction over claims for monetary relief asserted pursuant to Army and Air Force Exchange Service (AAFES) personnel regulations. Moreover, an Exchange employee who holds his or her position by appointment, rather than by an employment contract, cannot argue that an express contract exists between him or her and the government for purposes of Tucker Act jurisdiction. *Id.* at 735–38, 102 S.Ct. 2122–24. Lunetto does not argue that he has an express contract with the United States, nor could he; the government has demonstrated that Lunetto was appointed to his position.[6] An appointed employee subject to unwarranted personnel action does not have a cause of action against the government absent a specific regulation or statute. *United States v. Hopkins,* 427 U.S. 123, 128, 96 S.Ct. 2508, 2511, 49 L.Ed.2d 361 (1976). Rather, Lunetto claims he had an implied contract with the government. But jurisdiction over Lunetto's complaint cannot be premised upon the alleged violation of regulations that do not expressly authorize monetary damages. *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 739, 102 S.Ct. 2118, 2125, 72 L.Ed.2d 520 (1982); *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). While Secnavinst

5300.22(5)(d)(8) provides that an employee has "the potential to be 'made whole' financially for pay and restoration to duty" in the event that an employee successfully appeals an adverse personnel action, this regulation does not specifically authorize a remedy under the Tucker Act. Furthermore, Lunetto has not presented this Court with examples of any Navy Exchange Regulations which might authorize suit under the Tucker Act.

Allowing a lawsuit under the Tucker Act based upon the above regulations would also violate the intent of Congress. While the Back Pay Act permits employees to recover lost wages due to unwarranted personnel actions, 5 U.S.C. § 5596(b)(1), Congress has clearly denied such a cause of action to Navy exchange employees in 5 U.S.C. § 2105(c).[7] Allowing Lunetto to sue for monetary damages under the Tucker Act because he asserted violations of Navy regulations governing terminations would thus interfere with Congress' legislative structure. *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 740, 102 S.Ct. 2118, 2125, 72 L.Ed.2d 520 (1982). Nor are we persuaded that Lunetto had an "implied in fact contract based upon the duties . . . delegated to him as a supervisor . . . in addition to those of his job classification. . . ." The job description Lunetto signed clearly provided for supervisory responsibilities, and Lunetto has not explained how such additional duties would create an implied contract. We therefore

---

**6.** For example, the government cites Navy regulations which refer to Exchange employees as employees who are appointed, Secnavinst 5300.22c.II(6); a regulation prohibiting the use of personal service contracts for jobs such as Lunetto's, *Id.* at C.III(12); and language which connotes employment by appointment rather than by contract, *Id.* at C.II(1)(a). The Supreme Court discussed similar regulations and concluded that the respondent was appointed in *Army and Air Force Exchange Service v. Sheehan,* —— U.S. at ——, 102 S.Ct. at 2122–23.

**7.** 5 U.S.C. § 2105(c) provides that:
(c) An employee paid from nonappropriated funds of the Army and Air Force Exchange Service, Army and Air Force Motion Picture Service, Navy Ship's Stores Ashore,

Navy exchanges, Marine Corps exchanges, Coast Guard exchanges, and other instrumentalities of the United States under the jurisdiction of the armed forces conducted for the comfort, pleasure, contentment, and mental and physical improvement of personnel of the armed forces is deemed not an employee for the purpose of—
(1) laws (other than subchapter IV of chapter 53 and sections 5550 and 7204 of this title) administered by the Office of Personnel Management; or
(2) subchapter I of chapter 81 and section 7902 of this title.
This subsection does not affect the status of these nonappropriated fund activities as Federal instrumentalities.

hold that the Tucker Act does not confer jurisdiction over Lunetto's claims for monetary relief.

### Count II

In Count II of his amended complaint, Lunetto asserts that his discharge denied him substantive and procedural due process, and he seeks reinstatement to his former position. He denies that the evidence elicited at the hearing of March 16, 1981, supported the decision of the Hearing Officer to terminate him, and declares that termination will not "promote the efficiency of the service." Lunetto further asserts that the United States failed to adequately investigate the incident upon which his termination was based. In response, the government argues that this Court should not reverse the decisions of the Exchange to terminate Lunetto unless they are lacking any rational basis and arbitrary and capricious.[8]

 The Court of Appeals for the Seventh Circuit has clearly articulated the standard of review to be applied in cases involving the discharge of government employees, which requires that we ascertain that proper procedures were followed in Lunetto's discharge and that it was not arbitrary and capricious. *Ringquist v. Hampton,* 582 F.2d 1138, 1139 (7th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458; *Pauley v. United States,* 419 F.2d 1061, 1065 (7th Cir.1969). An agency discharge decision is neither arbitrary nor capricious where the record shows a rational basis for the action, *Young v. Hampton,* 568 F.2d 1253, 1257 (7th Cir. 1977); reinstatement may thus be ordered only if an employee's discharge is not supportable on any rational basis. *Ringquist,* 582 F.2d at 1140. And the burden of proof

in a disciplinary proceeding has clearly been placed upon the agency, *Young, supra.*

Some of Lunetto's objections relate to the administrative procedures afforded to him. He claims that the Naval Exchange Officer failed to conduct an investigation into the offense, that the agency failed to apply prescribed standards for disciplinary action and that a penalty less severe than termination was not considered. The administrative record indicates that these objections are without merit. While the Hearing Officer conceded that the quality of the investigation was less thorough than it might have been, an investigation was indeed conducted. Captain Gray's testimony at the hearing revealed that he considered and rejected penalties other than termination. Moreover, the Exchange complied with the standards governing adverse personnel actions provided for in Secnavinst 5300.22(v).

 Turning to Lunetto's claims concerning the substance of the Exchange's decision, we note that the government presented evidence of a letter from Lunetto to Captain Gray which admitted that the charges against him were "basically true" and offered to make "financial reparation" for use of government employees. One of the employees involved testified at the hearing that he was returning from lunch when Lunetto approached him and enlisted his assistance; the witness also testified that he returned to work after helping Lunetto. Lunetto, moreover, conceded that he used government property for his own purposes. Review of the administrative record thus persuades us that there was a rational basis for Lunetto's termination. There is, furthermore, sufficient evidence in the record to conclude that the Exchange considered whether Lunetto's termination "will promote the efficiency of the service," which is an inquiry relevant to review of

**8.** The government also argued that Lunetto lacked a property interest in his position and thus could not present a claim cognizable under the Fifth Amendment. It is unnecessary for this Court to ascertain whether there exists a property interest in a position with the Naval Exchange; the elaborate administrative review mechanism established to deal with claims such as Lunetto's, and to which Lunetto has

availed himself, indicates that such employees indeed have property interests in their positions. And we need not define the procedural protections which attach to Lunetto's interest in his position, *see Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), since notice and appeal procedures are embodied in the Navy Regulations governing adverse actions against employees.

federal employee disciplinary proceedings. *Young v. Hampton,* 568 F.2d 1253, 1257 (7th Cir.1977).[9] And the fact that Lunetto occupied a supervisory position at the time of his misconduct, as well as the nature of the misconduct, underscores our conclusion that termination was not so disproportionate a penalty as to render the Exchange's action arbitrary and capricious. *Young,* 568 F.2d at 1264. We therefore conclude that the Navy Exchange did not abuse its discretion in terminating Lunetto and grant the government's motion for summary judgment as to Count II.

### Count III

■ In Count III Lunetto claims that he has a clear right to reinstatement to his former position and invokes 28 U.S.C. § 1361, *see* note 4, *supra,* as a jurisdictional basis for this claim. Mandamus may issue only when a plaintiff presents a clear claim for relief and where the duty of the federal officer is both explicitly defined and purely ministerial. *McClendon v. Blount,* 452 F.2d 381, 383 (7th Cir.1971); mandamus is a "powerful and unusual" remedy, which must be defined by a statute that is clear and free from doubt. *Jarecki v. United States,* 590 F.2d 670, 674 (7th Cir.1979), *cert. denied,* 444 U.S. 829, 100 S.Ct. 55, 62 L.Ed.2d 37 (1979).

■ The absence of a statute or regulation establishing a clear duty on the part of the United States to reinstate Lunetto establishes that mandamus is inappropriate here. The government provided Lunetto with all of the procedural protections to which he was entitled, and his termination was not an abuse of discretion. He is thus not entitled to be "made whole" through reinstatement pursuant to Navy Regulations, and Count III is dismissed.

For the foregoing reasons, the government's motion to dismiss Counts I and III is granted; its motion for summary judgment as to Count II is also granted. It is so ordered.

---

**9.** Lunetto cites Regulations which require a showing of "promoting the efficiency of the service" before taking adverse action against employees, CCPO Glakesinst 12750.1(B)(2). The United States denies that the aforecited Regulation applies to Exchange employees. The Seventh Circuit in *Young v. Hampton,* 568 F.2d 1253 (7th Cir.1977), pointed to identical language in 5 U.S.C. § 7501(a) when discussing the appropriate standard of review for government discharge cases involving Civil Service employees. The parties have not addressed the issue of whether § 7501(a) even applies to Exchange employees in light of 5 U.S.C. § 2105(c), *see* note 7, *supra.* Evidence in the record, however, reveals that the Exchange considered the effect of Lunetto's discharge on the efficiency of the service, *see, e.g.,* John J. O'Connor's Report on Appeal of Benjamin Lunetto, Jr., at 15, and we have also considered this factor.